Filed 7/9/24  P. v. Mallet CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B328705 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A619834) |
| v. | |
| JEROME EVAN MALLET, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Affirmed.

Lori A. Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Jerome Evan Mallet,[1] who was convicted of first degree murder and other offenses in 1981, appeals from an order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6)[2] after an evidentiary hearing.[3]  He challenges the trial court's findings that he was a major participant in the felonies and that he acted with reckless indifference to human life.  We reject Mallet's contentions of error and affirm.

---

[1] "Mallet" is the correct spelling of appellant's name, and it is the spelling the parties use in this appeal.  Some court documents, including the opinion in Mallet's direct appeal, however, refer to appellant as "Mallett."  We use the correct spelling except in our citation to the opinion in the direct appeal, which was styled as *People v. Mallett*.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

Undesignated statutory references are to the Penal Code.

[3] This is Mallet's third appeal from an order denying his petition for resentencing, as we discuss more fully below.  (See *People v. Mallet* (Jan. 28, 2021, B301369) [nonpub. opn.] (*Mallet I*); *People v. Mallet* (July 27, 2022, B313218) [nonpub. opn.] (*Mallet II*).)

## BACKGROUND

**I.   Mallet's Trial**

**A.   Pertinent evidence presented at trial**

Substantial evidence presented at trial showed the following:[4]

On December 27, 1980, between 11:00 p.m. and midnight, Cora Taylor was in the bachelor apartment she shared with her children, Mary Taylor and Michael Taylor (the murder victim). William Birdsong, a friend, was also present.[5]

Cora heard a knock on the door, and three men entered the apartment without waiting for someone inside to open the door. One of the men asked for Michael, using his nickname Pierre. Cora asked the men to wait outside, but one of them said Pierre had told them to come inside and sit down. A fourth man remained outside on the porch.

Mary, Michael, and Birdsong were in the adjoining kitchen. Cora called to Michael, and he opened the kitchen door, looking surprised. Mary and Birdsong joined Michael in the doorway between the kitchen and the living room/bedroom. According to Mary's trial testimony, Michael indicated he knew one of the men (identified at trial as then-19-year-old appellant Mallet), and possibly one of the other suspects, from the park. Mallet or the

---

[4] On Mallet's motion, we augmented the record in this appeal with the reporter's transcripts from Mallet's trial.

[5] We will refer to members of the Taylor family by their first names to distinguish them because they share the same surname.

Cora, Mary, and Birdsong testified at trial.

3

other suspect told Michael to shut up.[6]  According to Cora and Mary, Mallet struck Birdsong or grabbed him by the collar and a scuffle ensued, with Mary and Michael coming to Birdsong's aid.[7]

Mallet pulled out a gun, ordered the victims to get on the bed, and asked Michael for money.[8]  Mary asked one of the other men, " 'What's happening, blood?' "  The man responded, " 'Ain't no blood here,' " and he hit her in the jaw with his fist.  Mary told the men they did not have any money, and Mallet struck her in the head with the gun.  Michael repeated that they did not have any money.  Mallet pointed the gun at Cora, addressed her as " 'old bitch,' " and threatened to shoot her first if the victims did not turn over money.  Mary heard him cock the gun.  Birdsong heard one of the other men say they were not going to hurt "the old lady."

Mallet ordered the victims to lie face down on the bed.  One of the men threw a coat over their heads.  Mallet stood guard over the victims as the other two men ransacked the apartment.  Mallet repeatedly asked Michael where the money was, and Michael said he did not have any.  At some point, the Taylors' telephone rang in the living room/bedroom, and one of the men picked up the receiver.  Mallet scolded the man and told him to put it down.

---

[6] Mary also testified that she had seen Mallet in her neighborhood before the crimes, once at the local park and once at a store near the park.

[7] Birdsong testified it was one of the other two men who grabbed him by the collar.

[8] Mallet was the only man Cora, Mary, and Birdsong saw with a gun.

4

One of the men (not Mallet) asked Birdsong if he had any money, and Birdsong said he had five dollars. The man told Birdsong he would kill him if he actually had more money. Birdsong said there was money in his wallet, and the man reached into Birdsong's pockets and took $60 from the wallet. The man whispered to Birdsong, " 'You have been invited to your friend's death.' " One of the men took Cora's purse from the bed.

Mary told the men they could take anything they wanted from the apartment, and she asked them not to hurt Michael. One of the men (not Mallet) pulled Mary off the bed by her hair, took her into the bathroom, and raped her twice. The man left Mary alone in the bathroom, and Mallet joined her. Mallet pulled down his pants and attempted to rape her but she resisted. The other man came back into the bathroom and tried to pull Mallet out. Mallet indicated he wanted to finish with Mary, but he acquiesced, and left the bathroom with the other man.[9]

While Mary was in the bathroom, Cora told Michael to tell the men where the money was, but Michael remained silent. One of the men (not Mallet) pulled Birdsong off the bed and told Cora and Michael to stand up. Then, Michael told the man there was money in a kitchen cabinet, and the man went to the kitchen to retrieve it.

According to Birdsong, the man who was waiting outside on the porch looked into the apartment, and Michael addressed him. Michael said, " 'You know me from the park. I shoot basketball

---

[9] The jury found a personal use firearm enhancement to be not true on count 4 for assault with intent to commit rape, so Mallet may no longer have had the gun when he was in the bathroom with Mary.

up there.' " Michael asked him to tell the other men not to hurt them. The man responded, " 'Yeah, you know, Pierre. Yeah, I know you.' "

One or more of the men led Birdsong and Cora to the bathroom. Cora was holding Michael's hand, but one of the men separated them and kept Michael out of the bathroom. Mary, Cora, and Birdsong were shut in the bathroom. Birdsong heard the men asking Michael for more money, and one of the men said something about Michael knowing his sister. Michael begged the men not to hurt anyone. Someone said to Michael, " 'You come down to the park,' " and " 'We don't like you anyway' " or " 'I don't like you anyway.' " Birdsong testified that the person who made the latter comments could have sounded like the man who had been waiting outside on the porch.

Then Cora, Mary, and Birdsong heard a gunshot in the living room/bedroom. Cora opened the bathroom door and saw Michael lying in a puddle of blood in the living room/bedroom. He had been shot in the head, and it was a fatal wound. The men were gone. The ordeal lasted between 30 and 45 minutes.

Shortly after midnight, law enforcement officers pursued a vehicle traveling without lights near the local park. The vehicle crashed, and the four male occupants fled. Officers found Mallet hiding in a bush nearby. Officers discovered a gun inside the vehicle and a stereo and photo album near the vehicle. A stereo, Michael's watch, and some Christmas presents (including the photo album) were missing from the apartment. Mary testified at trial that the gun officers recovered looked like the gun Mallet used.

## B. Verdicts and sentence

Mallet was tried alone. We take the following procedural history from our opinion in Mallet's appeal from the trial court's May 25, 2021 order denying his petition for resentencing after his first evidentiary hearing in this matter (*Mallet II*, *supra*, B313218), an appeal we discuss below.

"In 1981, a jury found Mallet guilty of one count of first degree murder under section 187 (count 1), two counts of forcible rape in concert under sections 261 and 264.1 (counts 2 & 3), one count of assault with intent to commit rape under section 220 (count 4), one count of burglary under section 459 (count 5), and three counts of robbery under section 211 (counts 6 through 8). The jury found true the allegations that Mallet personally used a firearm and that a principal was armed with a firearm in the commission of all offenses, except count 4, assault with intent to commit rape." (*Mallet II*, *supra*, B313218, p. 3.)

"As to count 1, the jury deadlocked on the special circumstance allegations that the murder was committed during the commission of a robbery and a burglary within the meaning of section 190.2. The trial court declared a mistrial as to those allegations and, at the time of sentencing, granted the prosecution's motion to dismiss the allegations. [Citation to opinion in Mallet's direct appeal.] A true finding on those allegations—under the version of section 190.2 in effect at the time of the killing—would have required the jury to find Mallet was the actual killer or intentionally aided and abetted in first degree murder. (See *People v. Banks* (2015) 61 Cal.4th 788, 798.) The 1980 murder in this case predated approval of Proposition 115, which amended section 190.2 to allow for felony-murder special circumstance findings where the defendant was a major

7

participant in the felony and acted with reckless indifference to human life. (See Prop. 115, § 10, as approved by voters, Primary Elec. (June 5, 1990).) Accordingly, to find the felony-murder special circumstances true in Mallet's case, the jury was not required to find he was a major participant in the felony who acted with reckless indifference to human life. [¶] As to count 6, which charged Mallet with robbery of the murder victim, the jury found *not true* the special allegation that Mallet personally inflicted great bodily injury on the murder victim." (*Mallet II*, *supra*, B313218, pp. 3-4.)

"On the murder count, the trial court sentenced Mallet 'to state prison for the term prescribed by law' [25 years to life], plus two years for the firearm enhancement, to be served consecutive to a total term of 21 years and four months on the remaining counts." (*Mallet II*, *supra*, B313218, p. 4.) Mallet appealed, and we affirmed the judgment of his convictions. (*People v. Mallett* (June 29, 1983, 41449) [nonpub. opn.].)

## II. The Petition for Resentencing and First Two Appeals

In 2018, the Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).) Senate Bill No. 1437 amended sections 188 (defining malice) and 189 (felony murder) and added former section 1170.95, now renumbered section 1172.6, which established a procedure for vacating murder convictions and

8

resentencing defendants who could no longer be convicted of murder in light of the amendments to sections 188 and 189 made effective January 1, 2019.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

On January 16, 2019, Mallet, as a self-represented litigant, filed a form petition for resentencing under former section 1170.95, now section 1172.6.  In the petition, Mallet checked boxes stating, in pertinent part, that he was convicted of first degree felony murder, and he could not now be convicted of that crime under changes to section 189, effective January 1, 2019, because (1) he was not the actual killer, (2) he did not directly aid and abet the murder with intent to kill, and (3) he was not a major participant in the felony, or he did not act with reckless indifference to human life during the course of the felony.  The trial court appointed counsel to represent Mallet and received briefing from the parties.  (*Mallet I*, *supra*, B301369, pp. 5-7.)

On September 10, 2019, the trial court summarily denied Mallet's petition for resentencing, and he appealed (*Mallet I*). This court determined the record of conviction did not establish as a matter of law that Mallet was ineligible for relief under former section 1170.95, and the trial court engaged in impermissible factfinding at the prima facie stage of the proceedings in reaching the conclusions that he aided and abetted with the specific intent to kill and that he was a major participant in the felony who acted with reckless indifference to human life.  We reversed the order summarily denying the petition and remanded the matter, directing the trial court to issue an order to show cause under former section 1170.95, subdivision (c), and conduct a hearing under subdivision (d) to

determine whether Mallet was entitled to relief. (*Mallet I*, *supra*, B301369, pp. 11-12.)

Upon remand, the district attorney filed a second response to Mallet's petition, arguing Mallet could still be convicted of felony-murder today under section 189, as amended, because (1) he acted with intent to kill, and (2) he was a major participant in the felonies who acted with reckless indifference to human life. In the brief, the district attorney relied on a summary of the facts and circumstances of the crimes that was derived from this court's opinion in Mallet's direct appeal. Mallet did not submit further briefing. (*Mallet II*, *supra*, B313218, pp. 7-8.)

The trial court set the matter for an order to show cause hearing, which occurred on May 18, 2021. The parties did not introduce any new evidence. After hearing argument from the parties, the court took the matter under submission.[10] On May 23, 2021, the court issued an order denying the petition, finding Mallet was a major participant in the felonies and acted with reckless indifference to human life. The court indicated in the order that it based these findings on a factual summary derived from this court's opinion in Mallet's direct appeal. (*Mallet II*, *supra*, B313218, pp. 8-9.)

Mallet appealed. We reversed the order denying the petition and remanded the matter for a new evidentiary hearing. We explained in our opinion that shortly after the evidentiary

---

[10] In his argument at the evidentiary hearing, Mallet referenced the factual summary in the district attorney's responses to the petition. He did not object when the trial court asked the parties if they had any objection to the court receiving and considering the opinion in the direct appeal. (*Mallet II*, *supra*, B313218, pp. 8-9.)

hearing, the Legislature amended former section 1170.95, subdivision (d)(3) to prohibit a trial court from relying on a factual summary in an appellate opinion to determine a petitioner's eligibility for resentencing. (Sen. Bill No. 775 (2021- 2022 Reg. Sess.) Stats. 2021, ch. 551, § 2.) The trial court's decision denying the petition rested on evidence made inadmissible by statute, and there was no evidence in the appellate record on which we could conclude the error was harmless. (*Mallet II*, *supra*, B313218, pp. 2, 10-15.)

## III.   Second Evidentiary Hearing

Upon remand, the district attorney filed a third response to Mallet's petition for rehearing, which included a summary of the circumstances of the crimes with citations to the reporter's transcripts from Mallet's trial. Mallet did not file further briefing.

The trial court held the second evidentiary hearing on February 3, 2023. In advance of the hearing, the court reviewed and considered the reporter's transcripts from Mallet's trial, which it received on a disc. The court stated at the hearing that it would base its decision on those trial transcripts. After the parties presented their arguments, the court denied the petition for resentencing, finding Mallet was a major participant in the felonies, and he acted with reckless indifference to human life. The court provided a summary of the facts and circumstances of the crimes and then set forth its ruling on the record as follows, in pertinent part:

"It came out in the trial that Mr. Mallet was the only one who knew Michael of the group [of four suspects]. And why, none of us may never know, there may be theories, but why they decided to go there. Perhaps it was a beef with Michael. But

11

regardless, Mr. Mallet and the others invaded the privacy of one's home which is the sanctity of our privacy, our castle, so to speak. They intruded into that home for whatever their reasons were and there was guns involved. There was rapes involved, et cetera.

"If Mr. Mallet wasn't a major participant, then I don't know of any set of facts that could meet that criteria. He certainly was a major participant and it can be argued, was argued, that he was the ring leader in this and the fact that he was the only one that knew Michael and would have reason based on that association to be there for whatever his reasons were, making certain statements that were attributed to him and certain actions, pistol-whipping people, talking about blowing their heads off and attempting to rape a young woman who was in there, just the fact that he happened to be in that apartment at that time. So the court has no issues as to that. He certainly was a major participant.

"And for the same reasons he certainly did act with reckless indifference to human life. That is all based on his conduct and the facts that came out in the trial. I don't see any other way any reasonable person could look at this based on his conduct. . . ."

## DISCUSSION

### I. Section 1172.6 and Standards Applicable to the Evidentiary Hearing

If a defendant files a facially sufficient petition for resentencing and makes a prima facie case for relief under section 1172.6, as in this case, the trial court must issue an order to show cause and "hold a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts . . . ."

(§ 1172.6, subd. (d)(1).)  At the hearing, the burden of proof is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The parties may rely on "evidence previously admitted at any prior hearing or trial that is admissible under current law," and they "may also offer new or additional evidence to meet their respective burdens." (*Ibid*.)  "At the evidentiary hearing, the trial court acts as an independent fact finder." (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.)

Section 189, subdivision (e), added by Senate Bill No. 1437, states:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery and burglary] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

"We review the trial court's factual findings for substantial evidence.  [Citation.]  'Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or

13

uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' [Citation.] We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. [Citation.] We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.)[11]

## II. Case Law Defining Major Participant and Reckless Indifference to Human Life

### A. Major participant

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), our Supreme Court set out a series of considerations relevant to determining whether a particular defendant was a major participant in the underlying felony. These factors are as follows: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a

---

[11] Mallet argues the appropriate standard of review should be independent review because the judge who ruled on the petition did not preside over Mallet's trial and decided this matter on a cold record (the trial transcripts) without live testimony. "[A]ppellate courts that have considered this argument have uniformly rejected it," and we have no cause to revisit the issue. (See *People v. Underwood* (2024) 99 Cal.App.5th 303, 313-314.)

particular role in the death?  What did the defendant do after lethal force was used?  No one of these considerations is necessary, nor is any one of them necessarily sufficient.  All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Id.* at p. 803, fn. omitted.)  The court noted that "participation in an armed robbery, without more, does not involve 'engaging in criminal activities known to carry a grave risk of death.' " (*Id.* at p. 805.)

The defendant in *Banks* was a getaway driver in an armed robbery of a marijuana dispensary.  (*Banks, supra,* 61 Cal.4th at pp. 804-805.)  The court held there was insufficient evidence that he was a major participant in the robbery, noting that he was not present at the scene when a cohort shot and killed a guard at the dispensary; rather, he was sitting in a car three blocks away.  (*Id.* at p. 805.)  Thus, "There was no evidence he saw or heard the shooting, that he could have seen or heard the shooting, or that he had any immediate role in instigating it or could have prevented it." (*Ibid.*)  In addition, there was no evidence that he procured the weapons or that his confederates had a history of committing murder or other violent crimes. (*Ibid.*)

## B.     Reckless indifference to human life

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*In re Scoggins* (2020) 9 Cal.5th 667, 676.)  It "has a subjective and an objective element.  [Citation.]  As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular

15

offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.]  As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." '  [Citation.]  'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement.  [Citation.]  Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*Id*. at p. 677.)

In *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), our Supreme Court established a list of factors useful to determining whether a defendant acted with reckless indifference to human life.  Because the issue of reckless indifference to human life overlaps significantly with major participation in the underlying felony, the relevant factors are similar to those stated in *Banks*. (See *id*. at pp. 614-615.)  The factors identified in *Clark* are:  (1) The defendant's knowledge of weapons, the number of weapons used, and the defendant's own use of weapons; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge that his cohort was likely to kill; and (5) whether the defendant made efforts to minimize the risk of violence during the felony.  (*Id*. at pp. 618-622.)  Just as in *Banks*, the court in *Clark* clarified that these considerations are not

16

exhaustive, sufficient, nor necessary to establishing whether the defendant's conduct met the standard for the special circumstance. (*Id.* at p. 618.) Knowledge that a confederate has a gun and that armed robberies carry a risk of death, without more, is not sufficient to show reckless indifference to human life. (*Id.* at pp. 617-618.)

The court in *Clark* applied these factors and concluded there was insufficient evidence to show the defendant acted with reckless indifference to human life. (*Clark, supra,* 63 Cal.4th at p. 623.) The defendant was the principal planner of a robbery of a CompUSA store. The plan was to wait until the store was closed, then handcuff the staff in the store's bathroom and load store merchandise into a U-Haul van. (*Id.* at p. 620.) The mother of a store employee came into the store looking for her son, surprising one of the defendant's confederates, who shot and killed her. (*Id.* at p. 537.) Several factors contributed to the court's conclusion that the defendant did not act with reckless indifference to human life. Most notably, the defendant was not present at the time of the shooting, and he had planned the robbery in a way that would minimize the risk of violence. He scheduled the robbery after the store closed, when fewer people were likely to be present, and expected the group to use only one gun, which was loaded with only a single bullet. (*Id.* at pp. 621-622.) "[N]o evidence was presented at trial that [the shooter] was known to have a propensity for violence, let alone evidence indicating that defendant was aware of such a propensity." (*Id.* at p. 621.) The court noted a "defendant's willingness to engage in an armed robbery with individuals known to him to use lethal force may give rise to the inference that the defendant disregarded a 'grave risk of death.'" (*Ibid.*)

17

## III. The Trial Court's Factual Findings on the Petition Are Not Contrary to the Jury's Factual Findings/Verdicts at Mallet's Trial

Before reviewing the sufficiency of the evidence supporting the trial court's decision, we address and reject Mallet's contention that the trial court committed reversible error by making a "factual determination crucial to its decision" that is contrary to a "finding" made by Mallet's jury and not supported by substantial evidence.[12]

The purported erroneous factual determination to which Mallet refers is "that Mallet was the only person among the four suspects who knew Michael Taylor." Mallet argues this factual determination "was crucial to [the trial court's] holding that Mallet was the ringleader so [he] was necessarily a major participant who acted with reckless indifference to human life."

Mallet asserts there is evidence supporting the theory that other suspects knew Michael "and that the killing was the result of a personal vendetta held by one of the suspects other than Mallet and was independent of the robbery." Mallet references the following evidence: According to Mary, Michael indicated he knew one of the other suspects who was inside the apartment (identified at trial as suspect No. 2). Birdsong testified that suspect No. 2 whispered to him, " 'You have been invited to your friend's death.' " Birdsong also indicated in his testimony that the suspect who waited outside on the porch (identified at trial as suspect No. 4) agreed with Michael when Michael said the man

---

[12] The Attorney General argues Mallet forfeited this contention by failing to raise it below. We disagree. Mallet raised his concerns related to this contention with the trial court at the second evidentiary hearing.

18

knew him from the park. Birdsong heard a man, who could have been suspect No. 4, say to Michael before the gunshot, " 'We don't like you anyway' " or " 'I don't like you anyway.' "

According to Mallet, the trial record "reveals" the jury shared this "interpretation of the evidence that Michael's murder was the result of a personal vendetta, separate and independent from the robbery, and unknown to Mallet." (Fn. omitted.) He references the following question the jury posed to the trial court: "If one of the robbers killed for a personal reason and others did not know this was likely to occur, are all guilty of first degree murder?"[13] The trial court responded by rereading one of the jury instructions on first degree felony murder.

There was no jury *finding* at Mallet's trial that is contrary to the trial court's decision here. The jury's verdicts, including the finding that Mallet did not inflict great bodily injury on Michael during the robbery, and the not-true finding on the felony murder special circumstance (which, at that time, would have required the jury to find Mallet was the actual killer or intentionally aided and abetted in first degree murder), are not inconsistent with the trial court's current findings that Mallet was a major participant in the felonies who acted with reckless indifference to human life. (Cf. *People v. Henley* (2022) 85 Cal.App.5th 1003, [on a section 1172.6 petition, the court's finding that the defendant personally used a firearm during the robbery was inconsistent with the jury's not-true finding on the personal use firearm enhancement, which was based on the same evidentiary record].) The jury's *question* is not a factual *finding* on which Mallet may rely. It is pure speculation to assume the

_____

[13] As set forth above, Mallet was tried alone.

19

jury would have made factual findings that Mallet was not a major participant in the felonies, and he did not act with reckless indifference to human life, if the jury had been asked to reach these issues.

### IV. Substantial Evidence Supports the Trial Court's Findings That Mallet Was a Major Participant in the Felonies Who Acted With Reckless Indifference to Human Life

Mallet contends there is no substantial evidence supporting the trial court's decision, and the insufficient evidence of felony murder violated his due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 15 of the California Constitution.

Upholding the trial court's decision is not dependent upon whether there is substantial evidence showing that Mallet was the only suspect who knew Michael or that Mallet was the ringleader, as Mallet suggests. Here, we are reviewing the sufficiency of the evidence supporting the court's findings that Mallet was a major participant in the felonies and that he acted with reckless indifference to human life.

Substantial evidence in the record demonstrates the following, in pertinent part: Mallet pulled out a gun when a scuffle between the suspects and victims ensued. He pointed a gun at the victims, demanded money, and ordered them to lie face down on the bed. He watched over them with the gun as his accomplices ransacked the apartment. He threatened to shoot and kill the victims if they did not turn over money. He struck Mary in the head with the gun and assaulted her with the intent to rape her. The suspects demanded additional money from

20

Michael just before he was shot. The ordeal lasted 30 to 45 minutes.

This substantial evidence supports the trial court's finding that Mallet was a major participant in the felonies. He was the only suspect the victims saw with a gun. He used the gun to subdue the victims. He threatened to kill the victims if the suspects did not receive the money they were after (and the record indicates the suspects were not satisfied with what they received). And he perpetrated violence against Mary. Substantial evidence demonstrates he participated " 'in criminal activities known to carry a grave risk of death,' " and his participation "was sufficiently significant to be considered 'major.' " (See *Banks*, *supra*, 61 Cal.4th at p. 803.) There is no requirement that he be the "ringleader" in order to be found a major participant.

The substantial evidence set forth above also supports the finding that Mallet acted with reckless indifference to human life. He did more than participate in a garden-variety armed robbery. He, himself, greatly increased the level of violence inherent in a garden-variety armed robbery. He threatened to shoot the victims, he pistol-whipped Mary, and he assaulted Mary with the intent to rape her. He terrorized a family in their home for 30 to 45 minutes. He was certainly aware that a death might result if the victims did not turn over sufficient money, as he was one of the suspects who made that threat.

In challenging the findings that he was a major participant who acted with reckless indifference to human life, Mallet repeats his theory that "the jury concluded Michael's death was not connected to the robbery," a theory not proven in the trial record, as discussed above. He argues that certain factors listed

in *Banks* and *Clark* are not shown here (e.g., he argues there is no evidence he was still in the apartment when Michael was shot), but the findings are not dependent upon the presence of every factor.  (See *Banks, supra*, 61 Cal.4th at p. 803 ["No one of these considerations is necessary, nor is any one of them necessarily sufficient"]; *Clark*, *supra*, 63 Cal.4th at p. 618 [same].)  And he construes the evidence in a light most favorable to himself, in contravention of the standard of review.

Finally, Mallet argues his youth is a relevant consideration that "bears significantly on his subjective ability to appreciate the dangers associated with armed robbery."  He was 19 years old when he committed the crimes.  We note that he also made this argument in the trial court.  As set forth above, substantial evidence demonstrates Mallet subjectively appreciated the dangers associated with armed robbery.  He held the victims at gunpoint, he threatened to shoot them if the robbery was not lucrative, and he pistol-whipped Mary.  Substantial evidence shows he was aware of and consciously disregarded the significant risk of death his actions created.

Because substantial evidence supports the trial court's decision, we need not address further Mallet's constitutional claim regarding insufficiency of the evidence.

## DISPOSITION

The February 3, 2023 order denying the petition for resentencing is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

23